UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY E. HARP,

                    Petitioner,                   Case Number: 09-13121

v.                                        HONORABLE AVERN COHN

CINDI CURTIN,

                    Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I.  Introduction**

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Anthony E. Harp

(Petitioner) is a state inmate at the Saginaw Correctional Facility in Freeland, Michigan.

Petitioner filed a pro se petition for a writ of habeas corpus challenging his convictions

for four counts of first-degree criminal sexual conduct.  Respondent, through the

Attorney General's office, filed a response, arguing that Petitioner's claims are

procedurally defaulted and/or without merit.  For the reasons which follow, the petition

will be denied.

**II.  Background**

**A.  Facts**

Petitioner's convictions arise from the sexual assault of Betty Jo W. at her home

in the Parkview Towers Apartments in Warren, Michigan.  Testimony at trial revealed

the following.

The apartment building housed senior citizens and disabled persons. Betty Jo, who was 61 years old, testified that she met Petitioner, then 46 years old, because he was living with his mother in the same building Betty Jo lived in. Betty Jo testified that she and Petitioner had consensual sex several times in her apartment before the assault occurred and that they spoke on the phone several times each week. Betty Jo also testified that Petitioner wanted the relationship to become more serious, but she did not.

On June 8, 2006, Betty Jo contacted Petitioner because she was having difficulty receiving her favorite television program. Petitioner offered to tape it for her. At approximately 10:00 p.m., Petitioner came to her apartment. He told her he was unable to tape the program. Betty Jo testified that Petitioner then ordered her to get up, go into the bedroom, and remove her clothes. He then penetrated her three different times against her will. Betty Jo then told Petitioner she was cold and put her pajamas on. She ran downstairs to his mother's apartment. She told Petitioner's mother to call 911. Petitioner caught up with Betty Jo at his mother's apartment. He ordered her to return to her own apartment. When she did not comply, he lifted her up and threw her against a wall. Petitioner's mother was angry about the noise. Petitioner grabbed Betty Jo's arm and led her back to her apartment.

Once back in the apartment, Petitioner put a hand around Betty Jo's neck and said he could snap it. Betty Jo attempted to pull an emergency medical alert cord, but Petitioner threatened to break her neck if she did so. Petitioner's mother then came to Betty Jo's apartment. Betty Jo testified that she told Petitioner's mother she was fine because she feared that Petitioner would otherwise kill her. Petitioner's mother left. He

2

then sexually assaulted Betty Jo again.  Petitioner finally left Betty Jo's apartment at approximately 8:00 a.m.  Before leaving, he told her that if she called the police he would kill her.

Betty Jo did not call the police.  The next day, she went to a previously scheduled therapy appointment and told the therapist about the assault.  The therapist encouraged Betty Jo to contact the police.  Betty Jo was reluctant to do so because she was fearful and embarrassed.  She ultimately called police the following day.  She went to a local hospital on June 12, 2006.  Betty Jo further testified that, a few months after the assault, Petitioner wrote her a letter of apology and seeking forgiveness.

Kristin McGregor, an emergency room nurse, testified as an expert witness.  She examined Betty Jo a few days after the assault.  McGregor testified that she observed bruises on the victim's arms, chest, neck and back, and a vaginal abrasion.  McGregor testified that the physical examination was consistent with what the victim told her had occurred.

Petitioner testified in his own defense.  He testified that he had consensual sexual intercourse with Betty Jo on the date of the offense.  He denied forcing her to have intercourse.  He testified that, after they had intercourse, he accidentally called Betty Jo by the name of another woman he was dating.  Betty Jo was upset, so she put on her pajamas and went to his mother's apartment, which made Petitioner angry.  Petitioner admitted that he grabbed Betty Jo by the arm, but insisted that he did not intend to injure her.  He then led her back to her apartment.  He denied having intercourse with her after they returned to Betty Jo's apartment.  After they talked for a while, Petitioner's mother called the apartment.  Shortly after that, he left the apartment.

### B.  Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of four counts of first-degree criminal sexual conduct.  On November 6, 2006, he was sentenced as a fourth habitual offender to four concurrent terms of 45 to 90 years' in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims:

I.      Appellant was denied his due process right to be convicted of first-degree criminal sexual conduct only on the basis of legally sufficient evidence where the prosecution failed to establish the element of personal injury.

II.     The trial court committed reversible error and violated appellant's due process right to a fair trial when it refused his request for a jury instruction on third-degree criminal sexual conduct where that offense is a necessarily included lesser offense of first-degree criminal sexual conduct.

III.    Appellant is entitled to resentencing where offense variable 7 was incorrectly scored and he was sentenced on the basis of inaccurate information, which makes his 540 month minimum sentence a departure above the appropriate sentencing guidelines range.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences.

People v. Harp, No. 274468, 2008 WL 108961 (Mich. Ct. App. Jan.10, 2008).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising these same claims.  The Michigan Supreme Court denied leave to appeal.

People v. Harp, 481 Mich. 877 (Mich. 2008).

Petitioner then filed a motion for relief from judgment in the trial court.  He raised these claims:

I.      Petitioner was denied the effective assistance of appellate counsel by his appellate counsel's failure to raise appropriate issues and assist Petitioner with his appeal.

II.     Petitioner was denied the effective assistance of trial counsel by his trial

4

counsel's failure to properly investigate and failure to object to Petitioner's seating at the trial.

III.    Petitioner was denied his due process right to a fair trial by the confusing, incorrect jury instructions given to the jury.

IV.    Petitioner was denied his due process right to a fair trial by his placement in a swivel-rocking chair in the middle of the courtroom, far away from his own counsel.

V.    Petitioner was denied his due process right to be sentenced based on accurate information.

VI.    A juror who knew the victim and her family was improperly seated on the jury and was present for a portion of the trial, potentially tainting the entire jury before this juror was removed.

VII.    The prosecutor engaged in multiple instances of misconduct that denied Petitioner a fair trial.

While the motion for relief from judgment was pending in state court, Petitioner filed the pending habeas petition. The Court held petition in abeyance pending completion of state court collateral review. (Doc. 4). The trial court denied the motion for relief from judgment. People v. Harp, No. 06-008239-01 (Wayne County Cir. Ct. June 16, 2009). Petitioner's applications for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court were denied. People v. Harp, No. 293665 (Mich. Ct. App. Dec. 3, 2009); People v. Harp, 486 Mich. 1042 (Mich. 2010).

Petitioner then moved to reopen this proceeding. The Court granted the motion. (Doc. 15). The petition raises these claims:

I.    There was insufficient evidence to convict Petitioner of CSC I because there was inadequate proof of injury.

II.    Petitioner was denied his due process right to a fair trial by the trial court's refusal to include a jury instruction for the lesser-included offense of CSC III, which does not include an element of injury.

5

III.    Petitioner was denied his due process right to be sentenced based on accurate information– Offense Variable 7.

IV.    Petitioner was denied the effective assistance of appellate counsel by his appellate counsel's failure to raise appropriate issues and assist Petitioner with his appeal.

V.    Petitioner was denied the effective assistance of trial counsel by his trial counsel's failure to properly investigate and failure to object to Petitioner's seating at the trial.

VI.    Petitioner was denied his due process right to a fair trial by the confusing, incorrect jury instructions given to the jury.

VII.    Petitioner was denied his due process right to a fair trial by his placement in a swivel-rocking chair in the middle of the courtroom, far away from his own counsel.

VIII.    A juror who knew the victim and her family was improperly seated on the jury and was present for a portion of the trial, potentially tainting the entire jury before this juror was removed.

IX.    The prosecutor engaged in multiple instances of misconduct that denied Petitioner a fair trial.

X.    Petitioner was denied his due process right to be sentenced based on accurate information– Offense Variables 3, 4, and 7.

### III.  Standard of Review

Petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA).  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 789 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a

7

federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  See Williams, 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007), citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV.  Analysis

### A.  Procedural Default

Respondent argues that Petitioner's claims numbered four through nine are

8

barred from federal habeas review because they are procedurally defaulted and Petitioner has not established cause and prejudice or a fundamental miscarriage of justice to excuse the default.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  Lambrix, 520 U.S. at 525.  Here, the interests of judicial economy are best served by addressing the merits of Petitioner's claims because, as will be explained, the claims lack merit.

## B.  Petitioner's Claims

### 1.  Claim I. - Sufficiency of the Evidence

Petitioner argues that habeas relief should be granted because insufficient evidence of injury was presented to sustain his conviction for first-degree criminal sexual conduct.  Respondent argues that the state appellate court's decision finding evidence of bruises and mental anguish was sufficient to establish the necessary injury element of first-degree criminal sexual conduct.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  "Two layers of deference apply to habeas claims challenging evidentiary sufficiency."  McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and

9

exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205, (citing Jackson, 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id.  Indeed, the Jackson standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application.  Davis v. Lafler, 658 F.3d 525, 535 (6th Cir. 2011).

The elements of first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b(1)(f) are that the defendant "(1) causes personal injury to the victim, (2) engages in sexual penetration with the victim, and (3) uses force or coercion to accomplish the sexual penetration."  People v. Nickens, 470 Mich. 622, 629, 685 N.W.2d 657 (2004).  The Michigan Court of Appeals, although not specifically citing Jackson, clearly applied the Jackson standard and held that sufficient evidence was presented to sustain Petitioner's conviction, citing the following evidence adduced at trial:

> Regarding bodily injury, the victim suffered from bruises to her arms, chest, neck, and back and a hematoma on her shoulder.  Her groin area was very tender, and she had an abrasion in the entrance to her vagina. Viewing this evidence in a light most favorable to the prosecution, there was sufficient evidence of bodily injury to sustain the conviction for first-degree criminal sexual conduct.  Regarding mental anguish, the victim testified that she was terrified during the assault and afraid that defendant would kill her.  She testified that she did not want anyone to know about the assault because she was scared and because defendant still lived in her building.  The nurse testified that the victim was scared and tearful when she spoke to her days after the incident.  Viewing this

10

evidence in a light most favorable to the prosecution, mental anguish was
also established.

Harp, 2008 WL 108961, at *1.

According the state court's findings of fact a presumption of correctness, the
Michigan Court of Appeals' decision that sufficient evidence was presented for a finding
of guilty did not "result[] in a decision that . . . involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court of the United
States."  28 U.S.C. § 2254(d)(1).  Petitioner is therefore not entitled to federal habeas
corpus relief with respect to this claim.

### 2.  Claims II. and VI. - Jury Instructions

In his second habeas claim, Petitioner argues that the trial court erred in failing to
instruct the jury on the lesser-included offense of third-degree criminal sexual conduct.
In his sixth claim, Petitioner argues that the preliminary jury instructions improperly
permitted the jury to begin deliberations prior to the close of evidence and that the trial
court failed to give an alibi instruction.  Neither claim warrants habeas relief.

"In a criminal trial, the State must prove every element of the offense, and a jury
instruction violates due process if it fails to give effect to that requirement.  Nonetheless,
not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of
a due process violation."  Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal
citation omitted).  An erroneous jury instruction warrants habeas corpus relief only
where the instruction "'so infected the entire trial that the resulting conviction violates
due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991), (quoting Cupp v. Naughten,
414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is

undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).

The Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case. See Beck v. Alabama, 447 U.S. 625, 637-38 (1980) (holding that a trial court is required to instruct on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant).  However, "the Constitution does not requires a lesser-included offense instruction in non-capital cases." Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." Bagby v. Sowders, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); see also, Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002).  Because there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1), habeas relief is denied on this claim. See Samu v. Elo, 14 F. App'x 477, 479 (6th Cir. 2001); Adams v. Smith, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003).

Moreover, under Michigan law, the offense of third-degree criminal sexual conduct does not require the element of personal injury.  The Michigan Court of Appeals

12

held that the trial court erred in refusing to give this instruction because there was some dispute regarding the nature and extent of the victim's injuries.  However, the court of appeals held the error harmless because the jury clearly rejected Petitioner's defense that the sex was consensual and, in rejecting that defense, found the victim's testimony more credible than Petitioner's version of events.  The court of appeals explained, "[b]ased on the jury's decision in that regard, it is likely that they also gave more credibility to the victim's testimony regarding her physical injuries and her emotional status.  Therefore, the error in failing to give the jury instruction . . . was harmless." Harp, 2008 WL 108961 at *2.  Thus, even if Petitioner's jury instruction claim regarding a failure to instruct on a lesser included offense was cognizable, it lacks merit.

Petitioner also argues that the trial court's preliminary jury instructions improperly allowed the jury to begin deliberations prematurely.  He specifically points to the following instruction as objectionable: "[A]ny discussion about this case has to be done in this room, has to be done only while the case is going on only among you as jurors. No one else." Tr., 10/18/06 at 92.  This instruction was given in the context of the trial court explaining to the jury their obligation not to discuss the case with anyone, including family members or friends, until after a verdict was reached.  The trial court also cautioned jurors that they must resist the temptation to respond to questions about their jury service until conclusion of the service.  Considered in the context of all of the preliminary jury instructions, it is clear that this instruction did not invite the jurors to deliberate prematurely.

Finally, Petitioner argues that the trial court erred in failing to give an instruction regarding an alibi defense.  Petitioner testified that the sexual relations were

13

consensual.  Therefore, an alibi instruction was not warranted.  Petitioner is not entiteld to habeas relief on this basis.

### 3.  Claims III. and X. - Sentencing Claims

In his third and tenth claims, Petitioner argues that Offense Variables (OV) 3, 4, and 7 were inaccurately scored.  He says that no points should be scored for OV 3 when bodily injury is an element of the offense of conviction.  Further, he claims that the evidence presented at trial did not show that the victim sought professional psychological treatment (OV 4), or that the offense involved torture, excessive brutality, and sadism (OV 7).  Respondent contends that these issues are not cognizable on federal habeas review.  The Court agrees with Respondent.

A sentence violates due process if it is based on "misinformation of constitutional magnitude[,]"  Roberts v. United States, 445 U.S. 552, 556 (1980), or "extensively and materially false" information, which the defendant had no opportunity to correct.  Townsend v. Burke, 334 U.S. 736 (1948).  "Townsend and its progeny are generally viewed as having established a due process 'requirement that a defendant be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false.'"  Stewart v. Erwin, 503 F.3d 488, 495 (6th Cir. 2007) (quoting Collins v. Buchkoe, 493 F.2d 343, 345 (6th Cir. 1974)).

During the sentencing hearing, defense counsel objected to the scoring of OV 7, arguing that Petitioner's conduct was not designed to substantially increase fear and anxiety.  The trial court scored fifty points for OV 7, finding Petitioner's threats to break the victim's neck or kill her if she did not comply sufficient to substantially increase the

14

victim's fear and anxiety.  Although given the opportunity to do so, defense counsel did not object to the scoring of OV 3 OR 4.

Petitioner disagrees with the trial court's scoring of OV 3, 4, and 7, but has not shown that the trial court relied on "extensively and materially false" information that he had no opportunity to correct.  Townsend, 334 U.S. 736, 741 (1948).  The trial court's determination of the facts was reasonable. 28 U.S.C. § 2254(d)(2).  In addition, the sentence is within the statutory maximum penalty for first-degree criminal sexual conduct (life) Mich. Comp. Laws §§ 750.520c & 750.145b.  Accordingly, no deprivation of due process occurred, and Petitioner is not entitled to habeas relief on the basis of this claim.

### 4.  Claim V . - Ineffective Assistance of Trial Counsel and Claim VII. - Courtroom Seating

Petitioner claims that his trial counsel was ineffective in failing to properly investigate or obtain exculpatory evidence before trial and in failing to object to Petitioner's being forced to sit in a chair in the center of the courtroom, separated from counsel, during the entire trial.  Petitioner also presents the claim regarding courtroom seating as a free-standing due process claim.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  Id. at 689.  This "requires a showing that counsel made errors

15

so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  A court's review of counsel's performance must be "highly deferential." Id. at 689.  Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by Strickland.  Knowles v. Mirzayance, 556 U.S. 111, 122-23 (2009).  "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." Id. at 123 (internal quotation omitted).

First, Petitioner says trial counsel should have admitted the rape kit because it would have shown whether the victim, in fact, suffered bruises.  Petitioner, however, offers no support for his theory that the rape kit may have shown that the victim was not bruised.  His conjecture as to what the rape kit may have contained is simply insufficient to show that counsel was ineffective or that failure to introduce the rape kit prejudiced the defense.  Moreover, it was reasonable for counsel not to introduce the rape kit where the defense was one of consent.  Thus, trial counsel was not ineffective in this regard.

Second, Petitioner argues that trail counsel was ineffective in failing to impeach the victim's testimony and in prematurely concluding cross-examination of the victim.

16

Petitioner fails to show any particular area in which the victim could have been impeached.  In addition, he fails to identify any particular questions that could have been asked had cross-examination been prolonged.  It was reasonable for trial counsel to be careful that the jury not see him as berating the witness.  Habeas relief is not warranted on this ground.

Third, Petitioner argues that trial counsel was ineffective in failing to obtain phone records which, Petitioner argues, would have shown that the events did not unfold as the victim claimed they did.  Petitioner raised this issue at sentencing.  Trial counsel responded and explained that he felt the phone records were irrelevant because they were local calls that would have been reflected on phone records simply as "local calls" without identifying the phone number.  In addition, trial counsel felt the records were irrelevant because the phone records would not have established who placed or received the calls.  Trial counsel therefore concluded that, because the defense was one of consent rather than identity, the records were irrelevant to the defense.

Although some attorneys may have subpoenaed the phone records, that is not the test for habeas review.  There are "countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689.  The record shows that trial counsel's decision regarding the phone records was the result of careful consideration of the relevant factors and Petitioner's defense.  Petitioner has failed to demonstrate that his counsel's representation fell below the reasonableness standard set forth in Strickland.

Finally, Petitioner argues that trial counsel was ineffective in failing to object to

17

his placement in a swivel chair in the middle of the courtroom, separate from trial

counsel.  Petitioner also claims that he was denied due process as a result.  There is

simply no indication on the record that Petitioner was separated from trial counsel

during the trial.  At sentencing, Petitioner complained about trial counsel's performance

in several respects, including the failure to obtain phone records.  Petitioner made no

mention of trial counsel failing to object to courtroom seating.  Petitioner's conclusory

allegation regarding seating is insufficient to show trial counsel was deficient or that

Petitioner was denied due process.

### 5.  Claim VIII. - Juror Misconduct

Next, Petitioner argues that the jury was tainted by the presence of an individual

who knew the victim and her family.  At the conclusion of the first day of trial, a juror

advised the trial court that, having seen some of the witnesses, he realized that the

victim and her son had been his neighbors eight or nine years earlier.  The juror stated

that he had not socialized with the victim or her son, but that he was uncomfortable

sitting on the jury after realizing the victim was his former neighbor.  The trial court

excused the juror from further service.  Petitioner argues that this juror may have tainted

the entire jury in favor of the victim.

The Sixth Amendment right to trial by jury encompasses the right to a fair trial by

a panel of impartial jurors.  Irvin v. Dowd, 366 U.S. 717 (1961).  The right to due

process, however, does not necessarily require a new trial in every instance in which a

juror is potentially biased.  Smith v. Phillips, 455 U.S. 209, 217 (1982).  Rather, "[d]ue

process means a jury capable and willing to decide the case solely on the evidence

before it, and a trial judge ever watchful to prevent prejudicial occurrences and to

18

determine the effect of such occurrences when they happen." Id. Only juror misconduct that deprives a defendant of a fair and impartial trial warrants habeas relief. Clemmons v. Sowders, 34 F.3d 352, 355 (6th Cir. 1994).

The record shows that the dismissed juror promptly advised the trial court when he realized he knew the victim and her son. The juror did not express an inability to be impartial or any bias against Petitioner. He simply expressed discomfort with sitting on the jury. There is no evidence that the dismissed juror shared his acquaintance with the victim with any other juror, nor is there any reason to believe that he did so. Petitioner's allegation that the dismissed juror may have tainted the remaining jurors is unsupported and conclusory. The Court finds no basis to question the jury's impartiality. Habeas relief is denied on this claim.

### 6. Claim IX. - Prosecutorial Misconduct

Next, Petitioner argues that habeas relief should be granted because the prosecutor engaged in misconduct by arguing facts not in evidence and argued his case during jury voir dire.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in Darden v. Wainwright, 477 U.S. 168, 181 (1986). Parker v. Matthews, __ U.S.__, 132 S. Ct. 2148, 2153, (June 11, 2012). In Darden, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' (the last state court to address the merits)

19

decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. at 2155, (quoting Harrington, 562 U.S. at __, 131 S. Ct. at 786-87).

Petitioner first argues that the prosecutor committed misconduct when, in closing argument, he stated that the victim was beaten up by Petitioner and dragged by her arm. Petitioner argues that there was no testimony that Petitioner hit the victim or that he dragged her anywhere. Petitioner is incorrect. The victim, in fact, testified that, at one point, Petitioner grabbed her and threw her against the wall, which she struck her head on. When she stood up, he pushed her and she struck her back against something. She also testified that the Petitioner grabbed her right arm, held on tightly, and brought her back to her apartment. Petitioner told her he should snap her neck while holding her neck in one of his hands. Based upon this testimony, the prosecutor's argument that the victim was beaten and dragged was a reasonable one drawn from the evidence presented. No misconduct occurred.

Petitioner also argues that the prosecutor improperly argued his case during voir dire. Petitioner's argument in this regard is comprised of one sentence and citation to five pages of the trial transcript. The Court has reviewed the transcript and finds nothing improper in the prosecutor's voir dire.

### 7. Claim IV. - Ineffective Assistance of Appellate Counsel

Finally, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Putting aside that the Court has determined that the interests of judicial economy were best served by the addressing the merits of the

20

petitioner's defaulted claims, Petitioner's ineffective assistance of appellate counsel claim will be briefly addressed.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983).  The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims Petitioner raised on collateral review and in his habeas petition.  As explained above, Petitioner has failed to show that any of these claims were potentially meritorious.  Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

## IV.  Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on any of his claims.  The petition for a writ of habeas corpus is DENIED.  Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

21

09-13121 Anthony Harp v. Cindi Curtin

SO ORDERED.

         S/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated:  June 6, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 6, 2013, by electronic and/or ordinary mail.

         S/Sakne Chami
        Case Manager, (313) 234-5160